■ In the Matter of BASIC HOLDING CORP., Respondent, v. HORTENSE W. GABEL, as City Rent and Rehabilitation Administrator, Appellant.— Judgment in an article 78 proceeding annulling an order of the City Rent and Rehabilitation Administrator denying a landlord's application for a certificate of eviction, reversed, on the law and the facts, with costs to appellant; the petition is dismissed and the determination reinstated. The sole question for the courts is whether there was substantial evidence for the Administrator's determination that the landlord did not, in good faith, apply for a certificate of eviction. If the order of the Administrator has a reasonable basis, the courts may not disturb the determination and substitute their judgment for that of the Administrator. (*Matter of Friedman* v. *Weaver*, 3 N Y 2d 123, 126; *Matter of Jacobs* v. *Gabel*, 20 A D 2d 780.) Since 1946, the tenant herein has occupied a six-room apartment on the sixth floor of a building at 320 West 83rd Street, Manhattan. In April, 1963, the landlord filed an application for a certificate of eviction claiming that the tenant's apartment was required for the resident superintendent who was then housed in a basement unit which the Buildings Department had declared illegal for occupancy. The record shows that although the violation was placed on the basement unit in December, 1962, the application for a certificate of eviction was not made until April, 1963. During the intervening period there were a number of leasings of three-room apartments in the building, including the leasing of a first-floor three-room apartment only a week before the conference at the Rent Administrator's office. The landlord made no attempt to utilize the vacancies in the building for occupancy of the superintendent and his family. What is more, the landlord never offered to relocate the tenant in any of those vacant three-room apartments as they became available. Superimposed upon that state of affairs is the evidence of bad feeling between the landlord and tenant generated by the tenant's rejection of a 10% rent increase, which was demanded in June, 1962 and March, 1963, and the landlord's refusal

to paint the tenant's apartment in October, 1962. The illegal occupancy of the basement by the superintendent was known to the landlord long before the violation was filed in December, 1962. There was a failure to explain why the landlord had not acted with respect to the basement occupancy by the superintendent, before actually being faced with criminal prosecution. In fact, within the year just preceding the application for a certificate of eviction, there was a six-room vacancy which the landlord converted into two three-room decontrolled units. These yielded rentals of from $120 to $130 per month for each decontrolled unit, as contrasted with the $90 per month paid by the tenant herein. It is true that at the time of the conversion of the six-room apartment the landlord held a temporary certificate permitting the use of the basement apartment for the resident superintendent. However, it must have been evident to the landlord, from the temporary character of the certificate, that at some time the landlord would have to remove the superintendent from the basement. Failure to act at the first available opportunity could then properly be considered as an element of the landlord's lack of good faith. Admittedly, the landlord was required by law to provide a resident superintendent for the subject premises. So, too, the landlord was faced with a violation filed by the Building Department. If these two considerations alone warranted the issuance of a certificate of eviction, any action by the Rent Administrator would be solely ministerial in processing the application. However, the Rent Administrator was required to find that the landlord was proceeding in good faith before granting a certificate. A decision on the issue of good faith must rest on an appraisal of the totality of the facts in the case. It cannot be said that a finding of the absence of good faith based on the availability of other apartments, the landlord's practice of dividing vacant six-room apartments into three-room units, and the history of the relations between the landlord and the tenant herein, is arbitrary and capricious. Such a record demonstrates substantial evidence in support of the finding of the Administrator. That finding should not have been disturbed. Concur — Valente, McNally and Staley, JJ.; Botein, P. J. and Breitel, J. dissent and vote to affirm.